Judge Mills
delivered the Opinion of the Court,
Anthony Thompson, the plaintiffin error, filed his hill in chancery, alleging that Richard Young departed this life, having previously made his-last will and testament, in which he authorized his executors to sell all his lands not specifically devised, and on his executors failing to act, Porter Clay became bis administrator with the will annexed, who in conjunction with the heirs and devisees, at the legislative session of 1815, procured the passage of an act of assembly, authorizing him to sell the undevised lands of the testator on his executing an additio?ial bond with security, for a faithful discharge of the trust; which bond Tie executed, and then sold and conveyed to the plaintiff in error a tract of upwards of 80 acres of land, one half the price of which was paid, and two notes for two equal instalments of the residue were executed; that Whitaker and Wilson having' a claim by deed against the testator, brought suit against his administrator and heirs, and the heirs, in pleading, set forth the same tract oí *360 with others, as assets descended to them, and on the rendition of judgment, it was rendered to be levied on this tract, with the assets descended, and bn the emanation of execution this tract was seized and sold and that to save himself from a loss of the land and to avoid danger; and trouble, he, under advice which he had takeh, became the purchaser at the sum of about three dollars per acre, which became a credit on the execution of Whitaker and Wilson, against the adminstrator and heirs, and on a -final settlement of that demand they had claimed and obtained credit for that amount, but the administrator had refused .to give the plaintiff in error credit for the same sum on thesb notesj but had assigned one of them for the two last instalments, tb Wm. D. Young and Hudson Martain, administrators of John Jackson, deceased, who had recovered judgment thereon, and Porter Clay had, also, recovered his judgment on the remaining bond. He prayed for and obtained an injunction, made Porter Clay, Wm. D. Young and Hudson Martain defendants, and prayed a discount against their judgments for the amount paid by him to the sheriff on the sale of the. land by execution, alleging that the estate of Young was insolvent.
flea by déiendnnt of lorhier decree.
£n <a plea of former decree to a bill to a judgment recovered by assignees of anobligation, the variance that defendants in the Zatter bilí are styled arlmitiistrators of J. 8. and in Che former nothing is said of theij1 oapácii ty is immaterial—
*360 In bar of this bilí Clay, Wm. D. Young and Martain pleaded a decree in a former suit, brought on the same equity, and for the same relief, and set out the record anjl.proceedings of the first suit as part of their plea. The court below sustained the bar, and dissolved the injunction, and dismissed the bill with costs and damages; to reverse which decree this writ of error is prosecuted with supersedeas.
That a decree in chancery on the merits will bar another suit for the same cause as readily as one judgment at law will bar another recovery, is a prop - osition too well known to need any aid from authority. Upon examination of the first record pleaded in bar, it is evidently-a bill containing the same equity and seeking the same relief, and must, therefore, be held a valid bar, unless some special circumstances are found which will make the case m exception to the general rule.-
The decree in Üic suit in either lbrfn is conclusive for or against the party in both capacities
An kbsolnte decree, dismissing a bill without the necessary parties (as for an injunction to a judgment in favor of two, omitting one,) is a bar to another bill with (he proper parties on the same equity.
It is insisted by the plaintiff in ciTor that (his hill charges "that the assignment of one of the notes enjoined was made by Porter Clay, administrator of Young, to Hudson Martain and Win, D. Young, who were the administrators of John Jackson deceased, and the first bill alleged the assignment, to be made to them in their individual right, and therefore the equity may be different.
We cannot say that the appellation of administrators, added to the names of the assignees, means any thing more than a description of person, and it is not alleged that they, hold this note and judgment in their fiduciary character, and if it was so charged, \vé can scarcely conceive of a case, where administrators could become assignees of a note, and iiot hold it in their individual right, as the office of administrator confers no-authority to trade in notes-, without involving individua! responsibility,''and.a •decree against and for sucii administrator, as an individua! would affect his title to the note as administrator and vice versa. It, therefore, follows that this ground cannot exempt this bill from the effect of the bar.
But the most plausible grounds urged in favor of the plaintiff in error is, that this hill alleges 'that one of the notes enjoined was assigned to Hudson Maftain and Win, D. Young, and the first hill charged that the assignment was made to Win. D. Young alone. Hence it is urged that the parlies here are not the same as in the first bill, and, therefore, the first record can neither bo pleaded or given in evidence in this suit.
It is readily conceded as a general rule, that to use one record or decree in evidence, as a bar in another, they must both be between the same parties. But this must admit of some- exceptions, and must operate consistently with oilier rules on the same subject.. Here the party relies on this rule, who committed the error in the first bill,- which made too few parties to it, and who submitted to an absolute decree on the merits in the first case, haring his equity. No party can use a former decree as a bar, who would not iiave been affected by it, if it had been against him; nor ran person he afi *362 ieclcd by it wbo could not iiave been benefited by a former decree, had it been in his favor, if the present complainant liad succeeded in the first suit, by a decree on the. merits he would have been relieved to the extent of his claim, and (he administrator of •Young, and his assignee, could not Iiave- asserted the claim afterwards. In the first bill he made too few parties, and a decree passed against him on the merits, to which he submitted, and however erroneous that decree may be, yet as it is rendered by a court of competent jurisdiction, and remains unreversed, it must have its operation, when used collaterally as this is. If it be true that one of these notes was assigned to two, he ought not to have prevailed in that case, without joining both. But as it was bis own ‘error to do so, and the decree was absolute, and not Without prejudice, he cannot proceed anesv against tb.e same parties to that suit, for they are shielded by an absolute decree, nor can he proceed without them against the new parties which he has made in the present bill, because this bill would in that case not. iiave the proper parties, and he could obtain no partial relief against some who were joint owners of the same equity and omit others who held the remaining undivided interest.
It h because a decree dismissing a bill on the merits without the necessary parlies muy be pleaded in bar to another bill that (his court will reverse such decrees and direct the proper disaiista In
But another consideration will operate conclusively against the present complainant, and that is the universal practice adopted in tins court of reversing decrees that are absolute, dismissing bills,, because the proper parlies were not before the court, and remanding the causes that decrees of dismission may be entered without prejudice; and that, at tlic instance of thé party who committed the error in omitting to make the proper parties in the first instance. This practice lias long prevailed in accordance with the practice of the English Chancery; and if an absolute decree, in a case where all the proper parties were not made, is no bar to another suit for the same cause, where the proper parties arc made, then such reversals are idle and nugatory, as they only annul decrees which in themselves are inoperative and harmless. This practice proves the judicial sense of the country that an absoluto decree with too few parties before the court, would bar a *363 bill with the right number of parties founded on the same equity and claiming the same relief. '
Crittenden for plaintiff; Jim. J. Marshall for defendants.
If it were not so, the consequences might be chievous,' and injurious to rights once settled by litigation. Who are, and who are not proper parties, is often a difficult question, and w>e are aware that owing to the inattentive and hurried manner in which business is conducted in our courts of original jurisdiction, many decrees are rendered settling important rights wdierc all the proper parties were not before the court; and if all these decrees, are to go for nothing and the parties are at liberty to rciitigate the matter by a new bill with proper parties, then the titles of property will be rendered precarious and unsettled, and the first suits which were supposed to settle these rights, are only the means resorted to by complainants to feel their way, till by renewed attempts they can he successful.
The decree of the court below must, therefore, be affirmed with costs and damages, on the damages given in the court below.